**Freddie Ellison BLACK, Plaintiff,**

v.

**Thomas CALLAHAN, Sheriff of Wichita County, Texas, and Deanna Maness, Captain, Defendants.**

Civ. A. No. 7:93–CV–79–X.

United States District Court,
N.D. Texas,
Wichita Falls Division.

Feb. 15, 1995.

Freddie Black, pro se.

Doug Baker, Asst. Dist. Atty., Wichita Falls, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

This is a prisoner's civil rights case filed pursuant to 42 U.S.C. § 1983 which was tried to the Court on February 9, 1995. For the reasons that follow [1], the Court finds in favor of the Defendants.

Plaintiff's Complaint was filed on June 28, 1993 without Plaintiff paying the required filing fee of $120.00, and the Court subsequently granted *pro se* Plaintiff BLACK *in forma pauperis* status under 28 U.S.C. § 1915 and waived his filing fee. Plaintiff's Complaint alleges that while serving his sentence for felony theft at the Wichita County Detention Center, Defendant CALLAHAN violated his first amendment right to meaningful judicial access by instructing his deputies to throw away or misplace his legal documents which he had filed with the Wichita County courts. Specifically, the Complaint states that "it is the practice of Sheriff CALLAHAN to deprive me of my incoming mail by stamping it with an incorrect address (notation) thus forwarding it back to the sender. On the occasion that Sheriff has used the above mentioned tactic, the incoming mail was from my family concerning legal and personal matters and also from a legal aid organization.[2] "

On February 8, 1993, Plaintiff was booked into the Wichita Falls Detention Center for felony theft from person and, on December 10, 1993, was transferred to the Price Daniels Unit of the Institutional Division of the Texas Department of Criminal Justice in Snyder, Texas, to serve time on another sentence. As explained at trial, the Wichita County Detention Center follows an established procedure of recording each piece of each individual prisoner's incoming and outgoing mail. At trial, Plaintiff adduced several self-authenticated letters received in reply to his letters to substantiate his first amendment claim. *U.S. v. Weinstein*, 762 F.2d 1522 (11th Cir.1985); Fed.R.Evid. 901. However, Plaintiff's letters that precipitated these reply letters are not in evidence.

On April 13, 1993, Plaintiff filed a postal complaint in Wichita Falls, Texas regarding a lost letter that was sent via first class mail, on March 3, 1993, from Plaintiff to James C. Harrington of the TCRP. That same day, Wichita Falls, Texas, Postmaster, Roby Christie, responded to Plaintiff's postal complaint. (Plaintiff's Exhibit 3) To determine why Plaintiff's mail was not properly delivered, Postmaster Christie filed a PS Form 1510 "Mail Loss/Rifling Report." (Plaintiff's Exhibit 2) After investigating the merits of Plaintiff's postal complaint, the Postal Service completed a PS Form 1510 "Mail Loss/Rifling Report" showing that Jo Friedman of the TCRP received Plaintiff's March 12, 1993 letter on March 15, 1993 and mailed Plaintiff a reply letter on March 31, 1993, but

---

1. The Court sets out in this memorandum opinion its findings of fact and conclusions of law based upon the entire evidentiary record from trial. *See* Fed.R.Civ.P. 52(a). To the extent that any finding of fact herein should be more properly construed to be a conclusion of law, or *vice versa*, it is so deemed.

2. The Court judicially notices the fact that the Texas Civil Rights Project ("TCRP"), to which Plaintiff refers, is a legal aid organization located in Austin, Texas. *See* Fed.R.Evid. 201.

that that reply letter, shortly thereafter, was returned to the TCRP.

On April 21, 1993, the TCRP wrote Plaintiff stating:

"We have recently received an inquiry concerning the delivery of one of your letters to us. We had received already four of your letters to us and, according to our records, have tried on at least two seperate occasions to contact you with a reply to your inquiries. Unfortunately, on two of those occasions, the letter we sent to you came back to us with the message "unknown address" or "incorrect address." This may be because your letters have various return addresses on them or it may be due to another, unknown problem.

"We regret to inform you that we will be unable to assist you in the matter which you address in your correspondence to us. Due to our limited staff and funds, we are unable to offer help to every person requesting such aid, and we apologize for all of the trouble you have gone through in trying to correspond successfully with us.

"Best of luck to you and we apologize again." (Plaintiff's Exhibit 5)

On May 5, 1993, the TCRP replied to another of Plaintiff's letters as follows:

"We have received your latest request for the previous letters which we have written to you and have been returned to us. Unfortunately, we have not kept those letters, only documentation of their return to us. As this is the case, we are unable to send you either copies of those letters or the envelopes in which they had been returned to us.

"We are sorry that we cannot provide you with the material you request in order to prove that your mail is being interrupted." (Plaintiff's Exhibit 6)

On May 7, 1993, Defendant CALLAHAN responded to Plaintiff's jail grievance complaint stating that he had reviewed Plaintiff's complaint of his mail being interrupted by someone in the Sheriff's Office, and considered Plaintiff's complaint to be "non-existent." (Plaintiff's Exhibit 1)

On August 10, 1993, the TCRP wrote Plaintiff the following:

"Enclosed is a copy of the April 23, 1993 letter you sent our office. Unfortunately, we do not have any other documentation we can send you and we cannot assist you in this case. We have limited financial resources and staff and are unable to act on the numerous requests we receive for assistance." (Plaintiff's Exhibit 7)

\* \* \* \* \* \*

To prevail on a claim of this type, Plaintiff must show not only that the defendants improperly interfered with the sending and receiving of his mail, but also that some actual injury or prejudice to his position as a litigant resulted from the interference. *Walker v. Navarro County Jail,* 4 F.3d 410, 413 (5th Cir.1993), *citing, Henthorn v. Swinson,* 955 F.2d 351, 354 (5th Cir.), *cert. denied,* 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); *Richardson v. McDonnell,* 841 F.2d 120, 122 (5th Cir.1988). Here, the Court does not find by a preponderance of the evidence that Plaintiff has demonstrated that *the named defendants in this case*—CALLAHAN and MANESS—improperly interfered even once with the sending and receiving of his mail even though there is some evidence of two lost pieces of mail. Apparently, Plaintiff hopes the Court will infer that only the defendants could have tampered with his mail since they had access and partial control over it thereby showing once and for all that they caused those two letters to not be delivered.[3] Obviously, such an inference is absurd in light of the fact that Plaintiff adduces no evidence that Defendants even knew of or had any connection to the two pieces of mail which were improperly returned to sender (the TCRP). The Court also does not find from a preponderance of the evidence that Defendant CALLAHAN instructed any person to throw away or misplace legal documents filed by Plaintiff, stamp any of Plaintiff's incoming mail with the notation "Incorrect Address," or that either defendant re-

---

**3.** Plaintiff seems to not even recognize the possibility that the two letters that were returned to sender (the TCRP) might actually have been the result of an innocent mistake made by someone other than the nominal defendants.

fused to mail any of Plaintiff BLACK'S correspondence. Additionally, Plaintiff has not shown by a preponderance of the evidence that his legal position was injured or prejudiced even if there was an interference (which the Court does not find).[4]

The Supreme Court in *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977), stated that the principle object of the right of access to the courts is to ensure that prisoners enjoy "... a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." In this case the record reflects (and the Court concludes) that Plaintiff BLACK enjoyed much more than a reasonably adequate opportunity to present constitutional violations to the courts.

First, Plaintiff BLACK has, in the past six years, filed at least ten prisoner civil rights lawsuits under 42 U.S.C. 1983[5]. Four of these lawsuits were filed in the last two years. Second, Plaintiff BLACK'S Mail Distribution Records from February 9, 1993 to December 10, 1993, show that he sent and received 361 pieces of mail: 100 incoming and 261 outgoing. (Defendant's Exhibit 1) The sheer volume of his litigation filings before this and other federal courts and his jail mailings convinces the Court that Plaintiff BLACK'S mail-related difficulties have not "meaningfully" hampered his presenting alleged constitutional right violations to the Courts as contemplated by *Bounds.* The Court is unpersuaded by the evidence presented at trial that Defendant MANESS or Defendant CALLAHAN deliberately, negligently, or otherwise interferred with Plaintiff BLACK's legal or personal mail, or that Defendant CALLAHAN instructed his deputies or any other Sheriff's department personnel to interfere with any of Plaintiff BLACK'S personal or legal mail.

The Court also concludes that even if Plaintiff BLACK had established that the defendants unlawfully diverted his personal and legal mail (which he did not), those interferences were so *de minimus* in volume and legal significance as a matter of law[6], that they do not rise to the level of a cognizable first amendment right violation of *"meaningful* access to the courts" as explicated by *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

Having determined that Plaintiff was not deprived of his first amendment right of meaningful judicial access by the defendants, it follows that the Defendants did not violate 42 U.S.C. § 1983, and that Plaintiff is not entitled to a judgment. In fact, the Court is unable to make any determination in Plaintiff's favor. The Court, therefore, ORDERS that the above-styled and -numbered cause of action should be, and hereby is, DISMISSED WITH PREJUDICE and that Plaintiff take nothing by this action which the Court finds to be frivolous.

\*　\*　\*　\*　\*　\*

▉ At trial on February 9, 1995, the evidence showed that Plaintiff now has sufficient funds to pay the proper filing fee for this lawsuit. The evidence was that the Plaintiff has paid for copies of documents to be used as evidence in his various lawsuits. The Court, of course, would and should never deny access to the Courts because any litigant is too poor to pay a filing fee. On the other hand, it is not fair to give this plaintiff a "free ride" just because he is incarcerated when he obviously has funds. The Court finds that Plaintiff is not indigent. Because of Plaintiff's history of abusive filings and because Plaintiff is no longer indigent, the Court makes the following remedial steps.

The Court hereby **ORDERS** Warden Medart of the Price Daniels Unit[7] of the Insti-

---

4. In fact, the evidence suggests exactly the opposite: that Plaintiff's legal position was not prejudiced by the lost reply letters from the TCRP since the TCRP denied Plaintiff legal assistance due to their limited staff and funds. (Plaintiff's Exhibit 5)

5. 7:88–CV–60; 7:88–CV–93; 7:88–CV–113; 7:89–CV–80; 7:90–CV–113; 7:90–CV–114; 7:92–

CV–145; 7:93–CV–79; 7:93–CV–64; 7:93–CV–121.

6. *See Hooten v. Jenne,* 786 F.2d 692, 697 (5th Cir.1986) (inmates who have been denied access have not necessarily suffered a constitutional deprivation if they have been deprived of access for only a short period of time.).

7. Where Plaintiff BLACK is currently confined.

tutional Division of the Texas Department of Criminal Justice, located in Snyder, Texas, to pay the Clerk of Court for the Wichita Falls Division of the Northern District of Texas, the $120 filing fee for this lawsuit out of Plaintiff BLACK'S prisoner account within thirty (30) days of his receipt of this Order.

Warden Medart of the Price Daniels Unit is further **ORDERED** to file with the Clerk of Court in Wichita Falls, Texas, within thirty days of his receipt of this Order, a signed statement attesting to the proper execution of this Order.

The Clerk of Court is instructed to mail a copy of this Order by certified mail, return receipt requested, to Warden Medart of the Price Daniels Unit of the Institutional Division of the Texas Department of Criminal Justice, 938 S. F.M. 1673, Snyder, Texas, 79545.

The Court further ORDERS the Clerk of Court to not accept any future legal filings from Plaintiff BLACK *unless* he tenders the proper filing fee at that time.

IT IS SO ORDERED.

SIGNED this 15th day of February, 1995.